## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NE'KOLE RAWLINGS, *et al.*,

      *Plaintiffs*,

    v.

DISTRICT OF COLUMBIA,

      *Defendant*.

Civil Action No. 24-2122 (SLS)

Judge Sparkle L. Sooknanan

## MEMORANDUM OPINION

N.W. is a student diagnosed with oppositional defiant disorder. In November 2023, N.W. and N.W.'s mother brought an administrative action alleging that the District of Columbia Public Schools (DCPS) failed to provide N.W. with a free and appropriate public education in violation of the Individuals with Disabilities Act (IDEA). The Plaintiffs prevailed and then brought this lawsuit to recover $121,277.19 in attorneys' fees and costs. For the reasons that follow, the Court grants the Plaintiffs $71,545.10 in attorneys' fees and costs.

## BACKGROUND & PROCEDURAL HISTORY

Ne'Kole Rawlings is the mother of N.W., a twelve-year-old diagnosed with oppositional defiant disorder. *See* Pls.' Mot., Ex. 2 at 4, Hearing Officer's Determination (HOD), ECF No. 7-1. On November 6, 2023, Ms. Rawlings filed an administrative complaint alleging that DCPS had deprived N.W. of a free and appropriate public education in four ways: (1) failing to provide Ms. Rawlings with access to N.W.'s educational records in June 2023 and August 2023, (2) failing to provide the behavioral support services guaranteed under N.W.'s 2021–2022 and 2022–2023 Individualized Education Plans (IEPs), (3) failing to reevaluate N.W. during the 2021–2022 school

year, and (4) failing to provide N.W. with an appropriate IEP on or about December 2, 2021, and/or on or about November 9, 2022. *See id.* at 3.

On January 2, 2024, DCPS made a settlement offer to the Plaintiffs, which included 600 hours of independent tutoring services, 50 hours of counseling services by a licensed social worker, a comprehensive psychological evaluation not to exceed $2,500, and up to $6,000 in attorneys' fees. *See* Def.'s Opp'n, Ex. 1, ECF No. 9-1; Ex. 2., ECF No. 9-2. The record does not tell us whether the Plaintiffs formally rejected DCPS's offer or simply did not respond.

After a trial, *see* HOD at 2, a hearing officer made a final determination in the Plaintiffs' favor, *see* HOD at 2, 29–31. The hearing officer found that DCPS did not deny N.W. a free and appropriate education by failing to provide access to educational records, but nevertheless ordered DCPS to provide Ms. Rawlings with all of N.W.'s missing records. *See id.* at 13–16. And he found that DCPS failed to provide N.W. with a free and appropriate education because N.W. missed 25% of N.W.'s behavioral support services required under the relevant IEPs, *see id.* at 16–18, the school failed to conduct a required reevaluation of N.W. during the 2021–2022 school year, *see id.* at 18–22, and DCPS failed to provide N.W. with appropriate IEPs on December 2, 2021, and November 9, 2022, respectively, *see id.* at 22–26. To remedy these violations, the hearing officer ordered DCPS to pay for 576 hours of academic tutoring by a special education teacher with transportation to and from the tutoring, and for 40 hours of counseling by a licensed psychologist or social worker with at least five years of experience. *Id.* at 29. He also ordered DCPS to provide Ms. Rawlings with the requested educational records. *Id.* at 29.

The Plaintiffs filed this lawsuit to recover $121,277.19 in attorneys' fees and costs. *See* Pls.' Mot. at 5, ECF No. 7. The District of Columbia agrees that the Plaintiffs are entitled to

attorneys' fees and costs, but it urges the Court to limit those fees and costs to $29,568.98. *See* Def.'s Opp'n at 20, ECF No. 9. The Plaintiffs' motion is now fully briefed.

## LEGAL STANDARD

The IDEA was enacted "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]" 20 U.S.C. § 1400(d)(1)(A). Courts may "award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability" in IDEA litigation. 20 U.S.C. § 1415(i)(3)(B)(i)(I). An IDEA plaintiff may "recover for work when there is 'a clear showing that the time was expended in pursuit of a successful resolution of the case in which fees are being claimed.'" *J.T. v. District of Columbia*, No. 19-cv-989, 2023 WL 355940, at *18–19 (D.D.C. Jan. 23, 2023) (quoting *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 735 F. App'x 733, 736 (D.C. Cir. 2018) (per curiam)). Courts must determine (1) whether the party seeking the fees is a "prevailing party" entitled to fees, and (2) what fees are "reasonable" in terms of the hours expended and the hourly rate claimed. *See Robinson v. District of Columbia*, 61 F. Supp. 3d 54, 58 (D.D.C. 2014).

To assess reasonableness, courts conduct a three-part analysis to (1) determine the "numbers of hours reasonably expended in litigation," (2) set a "reasonable hour rate," and (3) assess whether "a multiplier is warranted." *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015). The IDEA plaintiff bears the burden of proving both the reasonableness of the hours expended and the requested hourly rate. *See Dobbins v. District of Columbia*, No. 16-cv-1789, 2017 WL 4417591, at *3 (D.D.C. Sept. 29, 2017); *Wood v. District of Columbia*, 72 F. Supp. 3d 13, 18–19 (D.D.C. 2014).

## DISCUSSION

The District does not dispute that the Plaintiffs prevailed and are entitled to an award of attorneys' fees and costs for the underlying administrative proceedings. Def.'s Opp'n at 1. It argues only that the Plaintiffs "are not entitled to the full amount they seek," *id.*, and asks the Court to exclude certain categories of fees and costs from the award, *id.* at 20. The Court agrees that the Plaintiffs are not entitled to recover $121,277.19. But it is not convinced by all of the District's arguments. The Court finds that the Plaintiffs may recover attorneys' fees incurred after the District made its settlement offer, though it excludes and reduces certain time entries during that time period as unreasonable. The Court awards the Plaintiffs $71,545.10 in attorneys' fees and costs.

### A.    Eligibility for Post-Offer Costs

As a threshold matter, the District argues that the Plaintiffs may not recover attorneys' fees and costs incurred after the settlement offer on January 2, 2024, because the relief ordered by the hearing officer was not more favorable than the settlement offer. *See* Def.'s Opp'n at 3–7. The Court disagrees. The Plaintiffs were justified in rejecting DCPS's settlement offer, so they may recover post-offer attorneys' fees and costs.

Although a prevailing parent in IDEA litigation is entitled to reasonable attorneys' fees, *see* 20 U.S.C. § 1415(i)(3)(B)(i)(I), courts may not award attorneys' fees for services performed after a written settlement offer if: (1) the offer is made more than 10 days before the administrative proceeding begins, (2) the offer is not accepted within 10 days, (3) and the court finds that the relief obtained through the administrative proceedings is not more favorable than the settlement offer, 20 U.S.C. § 1415(i)(3)(D)(i). But attorneys' fees and costs may be awarded to a prevailing parent who was "substantially justified in rejecting the settlement offer." *Id.* § 1415(i)(3)(E).

DCPS made a settlement offer on January 2, 2024, more than ten days before the start of the administrative proceeding. *See* Pls.' Mot., Ex. 3 at 17, ECF No. 7-1 (billing records referencing

4

DCPS's settlement offer on January 2, 2024); *id.* Ex. 2 at 2, ECF No. 7-1 ("The matter proceeded to trial on January 19, 2024[.]"). And while the record does not reveal whether the Plaintiffs rejected the offer or failed to respond to it in a timely manner, it is clear that they did not accept it. *See B.L. Through Lax v. District of Columbia*, 517 F. Supp. 2d 57, 61 n.8 (D.D.C. 2007) (finding that the distinction between rejecting a settlement offer and failing to respond "is immaterial to the statute").

Turning then to a comparison between the relief obtained in the administrative proceedings and DCPS's settlement offer, the relief obtained was not more favorable than DCPS's offer. In its settlement offer, DCPS agreed to fund 600 hours of independent tutoring, 50 hours of counseling services by a licensed social worker, and an independent comprehensive psychological evaluation costing no more than $2,500. *See* Def.'s Opp'n, Ex. 1 at 1–2. The hearing officer ultimately awarded the Plaintiffs 576 hours of tutoring by a certified special education teacher with transportation to and from tutoring, 40 hours of counseling by a licensed psychologist or social worker with at least five years of experience, and all requested educational records. *See* Pls.' Mot., Ex. 2 at 29.

The Plaintiffs argue that the relief granted was more favorable because the hearing officer ordered transportation to and from the independent tutoring sessions and required that a licensed psychologist or social worker with at least five years of experience provide the counseling services. *See* Pls.' Reply at 3, ECF No. 10. But nothing in the record suggests that the Plaintiffs affirmatively requested either transportation or an experienced psychologist or social worker. Thus, those differences do not render the hearing officer's determination more favorable to the Plaintiffs. *See, e.g.*, *Daniel v. District of Columbia*, 174 F. Supp. 3d 532, 544 (2014) (finding a plaintiffs' request for independent evaluations throughout administrative proceedings "genuine" and "not a *post hoc*

rationalization . . . to avoid section 1415(i)(3)(D)(i)"); *T.B. ex rel. Brenneise v. San Diego Unified School Dist.*, 806 F.3d 451, 480 (9th Cir. 2015) (reversing a denial of fees by the district court where the administrative record showed the parents "were genuinely interested in a district[-school] placement" awarded by the hearing officer but not included in the settlement offer); *Staton v. District of Columbia*, No. 13-cv-773, 2014 WL 2700894, at *6–7 (D.D.C. June 11, 2014) (finding that relief including independent evaluations was more favorable because the plaintiffs expressed a clear preference for that form of relief throughout the administrative proceedings).

Without the transportation and limitation on the experience of the psychologist or social worker, the hearing officer's determination was substantially similar to DCPS's settlement offer. In fact, DCPS offered 24 more hours of tutoring and 10 more hours of counseling. And it offered to provide N.W. with an independent psychological evaluation costing $2,500 or less. Def.'s Opp'n, Ex. 1 at 1–2. Where a settlement offer and a hearing officer determination provide "substantially the same" relief, it cannot be said that the relief obtained is more favorable under the statute. *See, e.g.*, *Davis v. District of Columbia*, 71 F. Supp. 3d 141, 148–49 (D.D.C. 2014); *Dicks v. District of Columbia*, 109 F. Supp. 3d 126, 131 (D.D.C. 2015).

The Plaintiffs may nonetheless obtain post-offer attorneys' fees if they were substantially justified in rejecting DCPS's settlement offer. *See* 20 U.S.C. § 1415(i)(3)(E). The fee shifting provision in IDEA "ensure[s] that qualified counsel is available to enforce parents' rights." *Dicks*, 109 F. Supp. 3d at 131. For this reason, the failure to include reasonable attorneys' fees in an IDEA settlement offer justifies a plaintiff's rejection of that offer. *Brighthaupt v. District of Columbia*, 36 F. Supp. 3d 1, 8–9 (D.D.C. 2014); *see, e.g.*, *Davis*, 71 F. Supp. 3d at 150–151 (finding that parents were substantially justified in rejecting a settlement offer because it did not include any attorney's fees); *Dicks*, 109 F. Supp. 3d at 131 (finding that plaintiffs were substantially justified

in rejecting a settlement offer that included only $400 in attorneys' fees where counsel had expended 33.5 hours on the case as of the date of the offer).

Here, the District concedes that the Plaintiffs are entitled to $29,568.98 in attorneys' fees and costs for work performed before DCPS's settlement offer. *See* Def.'s Opp'n at 20. But the settlement offer included only $6,000 in attorneys' fees and costs, which is one-fifth of that amount. *Id.*, Ex. 1 at 4. The Court finds that DCPS's $6,000 offer was low enough to justify the Plaintiffs' rejection of the offer. *See, e.g.*, *Queen–Brown v. District of Columbia*, No. 14-cv-2001, Report & Recommendation, Docket No. 20 (D.D.C. July 2, 2015), at 13 (finding a settlement offer of $1,200 in attorney's fees when the parents had incurred $10,741.13 in costs to be "so obviously insincere as to be destined for rejection"), report and recommendation adopted in full, No. 14-cv-2001, Order, Docket No. 21 (D.D.C. July 20, 2015); *S. H. v. Mount Diablo Unified School District*, No. 16-cv-4308, 2018 WL 510167, at *6 (N.D. Cal. Jan. 23, 2018) (citing *Brighthaupt* to find a settlement offer of $10,000 in attorney's fees was "unreasonable" because it offered less than 50% of what the plaintiff's counsel would likely obtain if the plaintiff prevailed); *Brighthaupt*, 36 F. Supp. 3d at 9 ("An unreasonable offer does not advance [the] goals [of the IDEA] and it would be a pernicious and self-defeating interpretation of the IDEA to say that any offer of fees, no matter how unreasonable, must be accepted at the risk of losing all compensation from the date the settlement offer was made until the date the case is concluded."). The Plaintiffs may therefore recover for post-offer attorneys' fees and costs.

### B.    Reasonable Fees

The District next challenges the reasonableness of the Plaintiffs' request for attorneys' fees and costs. An attorneys' fee award is determined by the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433

(1983). Attorneys' fees are permitted when the hours billed are consistent with "the number of hours reasonably expended in litigation" and are charged at a "reasonable hourly rate." *Reed v. District of Columbia*, 843 F.3d 517, 520 (D.C. Cir. 2016) (quoting *Eley*, 793 F.3d at 100). While the "fee applicant bears the burden of . . . documenting the appropriate hours," "the opposing party remains free to rebut a fee claim." *Eley*, 793 F.3d at 100 (citation omitted). Here, both the hours expended and the hourly rate are unreasonable.

### 1.    Reasonable Hours Expended

Starting with the number of hours expended, a plaintiff may "submit[] an invoice that is sufficiently detailed to permit the District Court to make an independent determination whether or not the hours claimed are justified." *Wood*, 72 F. Supp. 3d at 18. If the plaintiff does this satisfactorily, the court presumes the reasonableness of the hours expended and "the burden then shifts to the [opposing party] to rebut this presumption." *Dobbins*, 2017 WL 4417591, at *3 (citations and internal quotation marks omitted). A district court retains discretion to reduce awards of attorneys' fees if "the time spent and legal services furnished were excessive considering the nature of the action or proceeding." 20 U.S.C. § 1415(i)(3)(F)(iii). Courts generally exclude "hours that were not 'reasonably expended,' such as for work that is 'excessive, redundant, or otherwise unnecessary.'" *Merrick v. District of Columbia*, 316 F. Supp. 3d 498, 517 (2018) (quoting *Hensley*, 461 U.S. at 434).

The District challenges the hours expended as unreasonable for three reasons. *First*, it challenges fifteen entries for case file review or case status meetings, arguing that the "Plaintiffs' attorneys devoted excessive amounts of time" to those tasks and "billed for multiple attorneys performing the same work." Def.'s Opp'n at 16. But case file review charges are compensable, *see, e.g.*, *Thomas ex rel. A.T. v. District of Columbia*, No. 03-cv-1791, 2007 WL 891367, at *10–11

(D.D.C. Mar. 22, 2007) (citing *Dorsett v. District of Columbia*, No. 00-cv-212 (Sept. 13, 2000, Mem. Op. at 6, ECF No. 26) ("Bi-weekly status reviews . . . evidence diligent legal representation, not unreasonable or excessive use of time, particularly when dealing with the challenges presented when litigating with the District of Columbia Public Schools."), as are case status meetings, *cf., e.g.*, *Joaquin v. Friendship Public Charter School*, 188 F. Supp. 3d 1, 13 (D.D.C. 2016) ("Time spent in consultations with co-counsel in an IDEA case is compensable." (citation omitted)). And the Court finds no evidence that multiple attorneys unnecessarily billed for the same work. *See* Pls.' Mot., Ex. 3 at 8 (time entry for Nov. 1, 2023, for work to ensure "compliance with the high standards for complaint imposed by DCPS and the requirements of IDEA" as well as "[r]eview . . . to make sure that the request of the parent and the needs of the student required a request for a hearing"); *id.* at 9 (time entry for Nov. 3, 2023, for "review of [the] file to ensure that [the] complaint was ready for filing"); *cf. Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 972 (D.C. Cir. 2004) (holding it was a duplication of effort where two associates billed time for filing the same brief on three separate occasions).

  *Second*, the District asks the Court to exclude attorneys' fees for time spent attending IEP meetings and other meetings not ordered by the hearing officer in the administrative proceedings. *See* Def.'s Opp'n at 16. The District is correct that attorneys' fees may not be awarded for IEP or other meetings unless those meetings are the result of an administrative proceeding. 20 U.S.C. § 1415(i)(3)(D)(ii); *Tillman v. District of Columbia*, 123 F. Supp. 3d 49, 60 (D.D.C. 2015) ("This Court has repeatedly found, however, that legal services for such IEP-related purposes are not compensable under the IDEA"); *A.S. v. District of Columbia*, 842 F. Supp. 2d 40, 50 (D.D.C. 2012) (disallowing fees for scheduling and preparing for IEP meeting). And the Plaintiffs have not met their burden to demonstrate that the "30-Day Review Meetings" were unrelated to the IEPs or

convened as a result of an administrative proceeding or judicial action. *See Simms v. District of Columbia*, No. 17-cv-970, 2018 WL 4761625 (D.D.C. July 26, 2018) (suggesting that 30-day review meetings are related to IEPs); *see also* District of Columbia Public Schools, *Opportunities Academies: Special Education Programming* at 1, https://perma.cc/T3KK-S7AD ("[A]ll students with IEPs will undergo a 30-day review meeting to ensure that the services provided at the Opportunity Academies are appropriate[.]").The Court thus excludes the relevant time entries on October 25, 2023, March 15, 2024, and March 21, 2024. *See* Pls.' Mot., Ex. 3 at 7 (time entry for Oct. 25, 2023; 0.33 hours to message legal assistant to schedule the 30-Day Review Meeting); *id.* at 26 (time entry for Mar. 15, 2024; 0.33 hours to schedule the student's IEP meeting); *id.* at 27 (time entry for Mar. 21, 2024; 0.17 hours to email the school about the 30-Day Review Meeting).

But according to the Plaintiffs, the time on November 29, 2024, "relate[s] to a conference between the parent and [the] law firm to discuss both an IEP meeting and [an] upcoming due process hearing." Pls.' Reply at 9; *see* Pls.' Mot., Ex. 3 at 13–14 (time entries for Nov. 29, 2023). When time entries "reflect time spent on a mix of tasks, some of which [are] IEP-related and some of which are not, courts tend to award fees for half the time sought." *Tillman*, 123 F. Supp. 3d at 62¬63 (D.D.C. 2015) (reducing such entries by half); *see, e.g.*, *G.M. v. Saddleback Valley School District*, No. 11-1449, 2012 WL 5947213, at *8 (C.D. Cal. Nov. 26, 2012) (same). The Court will follow that approach here and award half the time sought on November 29, 2023, where counsel performed both IEP and non-IEP-work. *See* Pls.' Mot., Ex. 3 at 14 (time entry for Nov. 29, 2023; 2.50 hours to "discuss hearings and . . . today's scheduled meeting for the student").

*Third*, the District argues that the Plaintiffs cannot recover for "time related to a resolution session meeting." Def.'s Opp'n at 17 (referring to "time entries dated November 28, 30, 2023; January 3, 4, 11, 12, 2024"). The statute makes clear that time spent on "resolution meetings" are

not reimbursable. *See* 20 U.S.C. § 1415(i)(3)(D)(iii); *see also D.D. ex rel. Davis v. District of Columbia*, 470 F. Supp. 2d 1, 2 (D.D.C. 2007) ("It is undisputed that attorneys' fees for time actually spent at a resolution session pursuant to 20 U.S.C. § 1415(f)(1)(B)(i) generally are not compensable under the IDEA."); *see also Howard v. Achievement Preparatory Academy Public Charter School*, No. 15-cv-199, 2016 WL 1212409, at *14 (D.D.C. Mar. 8, 2016) (excluding time for "preparing for, scheduling, discussing, attending, and debriefing from the resolution session"). So the Court excludes these time entries. *See* Pls.' Mot., Ex. 3 at 13 (time entry for Nov. 28, 2023; 0.17 hours spent preparing form for resolution team); *id.* at 14 (time entry for Nov. 30, 2023; 0.33 hours on emailing the resolution specialist); *id.* at 18 (time entry for Jan. 3, 2024; 0.33 hours on discussing settlement offer from the Resolution team), (time entries for Jan. 4, 2024; 0.50 hours on discussing settlement offer); *id.* at 20 (time entries for Jan. 11, 2024; 1.16 hours on discussing settlement offer), (time entry for Jan. 12, 2024; 0.33 hours discussing the settlement offer).

### 2. Reasonable Hourly Rate

Whether an hourly rate is reasonable turns on "(1) the attorney's billing practices, (2) the attorney's skill, experience, and reputation and (3) the prevailing market rates in the relevant community." *Eley*, 793 F.3d at 100 (cleaned up). The Court will address these in reverse order.

#### a. Prevailing Market Rates

A plaintiff may establish the prevailing market rate through "two separate but inter-related[] approaches." *Reed*, 843 F.3d at 521. The plaintiff may demonstrate that IDEA litigation qualifies as "complex federal litigation" or can "provid[e] evidence of the fees charged, and received, by IDEA litigators." *Id.*; *see also Flood v. District of Columbia*, 172 F. Supp. 3d 197, 210 (D.D.C. 2016). The Plaintiffs appear to offer evidence of both in requesting an hourly rate

based on the Fitzpatrick Matrix.[1] The District argues that the Plaintiffs should receive only 75% of the applicable rates on the Fitzpatrick Matrix because the underlying IDEA administrative proceedings were not complex. The Court agrees.

"IDEA litigation is presumptively not complex." *Harrell ex rel. J.W. v. District of Columbia*, No. 24-cv-3611, 2024 WL 3640033, at *4 (D.D.C. Aug. 2, 2024) (citing *DL v. District of Columbia*, 924 F.3d 585, 594 (D.C. Cir. 2019)). But the Plaintiffs ask the Court to find that IDEA cases are "complex federal litigation" to which the full Fitzpatrick Matrix applies. *See* Pl.'s Mot. at 7–13; *J.T. v. District of Columbia*, 652 F. Supp. 3d 11, 32 (2023). They offer three affidavits to support this contention. *See* Pls.' Mot. Exs. 11, 12, 13.

An affidavit from Diana M. Savit states that IDEA litigation is "at least as complex as employment discrimination" because it requires expertise in "specialized disciplines, including psychology, speech and language pathology, occupational therapy, physical therapy, and medicine." Pls.' Mot., Ex. 11 ¶¶ 6–7. But this Circuit has already rejected that argument. *See Reed*, 843 F.3d at 525 (holding that while "attorneys who litigate IDEA cases may have specialized non-legal knowledge," it "is insufficient to demonstrate that IDEA cases involve complex federal litigation" (internal quotation marks omitted)). And the other two affidavits from Douglas Tyrka and Alana Hecht explain that IDEA litigation is complex because "there is very limited discovery

---

[1] The Fitzpatrick Matrix was generated in 2021 by the United States Attorney's Office (USAO) for the District of Columbia and reflects the average hourly rates of lawyers handling complex federal litigation in the District Court for the District of Columbia. *J.T. v. District of Columbia*, 652 F. Supp. 3d 11, 16 (D.D.C. 2023). The Parties agree that the Fitzpatrick Matrix is the appropriate measure of the prevailing market rate in this case. *See* Pls.' Mot. at 12 ("For attorneys, time is sought at a rate discounted from the Fitzpatrick Matrix."); Def.'s Opp'n at 13 ("[T]he District proposes that the Court award rates at 3/4 of the applicable annual rated outlined in the USAO Fitzpatrick Matrix"). Most older cases rely on the *Laffey* Matrix, a predecessor of the Fitzpatrick Matrix. But this Court agrees that the Fitzpatrick Matrix "offers a superior measure of the prevailing market rate for complex federal litigation in the District as compared to the *Laffey* Matrix." *J.T.*, 652 F. Supp. 3d at 32.

and pretrial exchange between the parties in IDEA cases," leading to a lack of information and "respondents [] spontaneously adjust[ing] defenses." Pls.' Mot., Ex. 12 ¶ 21; *see id.* Ex. 13 ¶ 6 (similar). But the absence of discovery is not a point in the Plaintiffs' favor. *Reed*, 843 F.3d at 525 ("[T]he absence of discovery may suggest that IDEA cases are not as complex as cases in which discovery is extensive.").

Nothing in these affidavits suggests that IDEA litigation is categorically complex. They contain only "conclusory statements that IDEA litigation is 'as complex' as other types of cases deemed by [the D.C. Circuit] to be 'complex federal litigation,'" and "absent an explanation of why this is so, [they] cannot suffice to meet [the Plaintiffs'] burden." *Reed*, 843 F.3d at 525 (finding that "affidavits includ[ing] statements noting that practitioners have found 'legal work under the IDEA to be far more complex than Title VII work and civil rights work'" did not demonstrate IDEA litigation was complex federal litigation); *Snead v. District of Columbia*, 139 F. Supp. 3d 375, 379 (D.D.C. 2015) (noting that courts in this District have interpreted Circuit law "as strongly suggesting that IDEA matters are infrequently comparable to complex federal litigation, and therefore, full [Matrix] rates should not be awarded in such cases"); *Rooths v. District of Columbia*, 802 F. Supp. 2d 56, 62–63 (D.D.C. 2011) (finding that "[l]ike most IDEA cases, the claim on which the plaintiff prevailed . . . involved very simple facts, little evidence, and no novel or complicated questions of law"). "Accordingly, following the lead of other courts in this jurisdiction . . . the undersigned finds that Plaintiff has failed to demonstrate that IDEA litigation in general is sufficiently complex to justify the presumptive application of [Matrix] rates." *Dobbins*, 2017 WL 7510879, at *6.

The Plaintiffs also offer no evidence suggesting that this particular case is complex. They raised no novel legal issues in the administrative proceedings, *see, e.g.*, *Rooths*, 802 F. Supp. 2d

56, 63 (D.D.C. 2011) (finding no novel questions of law in a similar IDEA challenge); *Harrell ex rel. J.W.*, 2024 WL 3640033, at \*4 (same), which involved "run-of-the-mill issues involved in many IDEA cases," *Wilhite v. District of Columbia*, 110 F. Supp. 3d 77, 89 (D.D.C. 2015) (internal citations and quotations marks omitted). In arguing otherwise, the Plaintiffs point to other cases in this District. Pls.' Mot. at 9–10. But one of these cases is not even an IDEA case, *Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58, 62 (D.C. Cir. 2015) (considering Section 1983 class action and noting that in" IDEA claims, there is a submarket in which attorneys' hourly fees are generally lower than the [USAO rates]"), and the other was more complex and time-consuming than this one, *J.T.*, 2023 WL 355940, at \*16–18, 28–29 (case involving two administrative matters resulting in years-long federal litigation). In the third case, the court was persuaded by the plaintiff's declarations from several practitioners in support of the requested prevailing market rate. *See Merrick*, 316 F. Supp. 3d at 512–13 (weighing five declarations from comparable practitioners).

Alternatively, a plaintiff may establish the prevailing market rate by relying on rates charged by other IDEA litigators in the community. The Plaintiffs provide two attorney affidavits in support of their requested hourly rate, which address rates charged in 2015 and 2020, respectively. *See* Pls.' Mot., Exs. 11, 12. But an affidavit about rates charged in 2015 is insufficient to establish a prevailing market rate for work performed in 2024. *See* Ex. 11; *Joaquin v. Friendship Public Charter School*, 188 F. Supp. 3d 1, 18–19 (D.D.C. 2016) (finding that settlements from eight to ten years ago are not "evidence of *recent* fees awarded . . . through settlement") (emphasis in original) (quoting *Eley*, 793 F. 3d at 101). And the other affidavit tracks the *Laffey* Matrix, *see* Ex. 12 ¶ 8, which the Court declines to apply here. Moreover, the declarant, Mr. Tyrka, reached settlement agreements with the District for many of his IDEA cases, *see* Pls.' Mot., Ex. 12 ¶¶ 11,

13, and "the amount of fees that the District agrees to pay an attorney as part of a bulk settlement is not determined by market forces," *Rooths*, 802 F. Supp. 2d at 62; *see also Joaquin v. Friendship Public Charter School*, 188 F. Supp. 3d 1, 19 n.14 (D.D.C. 2016) (same).

The Plaintiffs also submit affidavits from their own attorneys to support the requested rates. But the Plaintiffs' attorneys do not charge clients, *see* Pls.' Reply at 5, and attorneys must show what they "actually billed . . . in other cases during the [relevant] period," *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1326 (D.C. Cir. 1982). Considering these affidavits with the affidavits from Mr. Tyrka and Ms. Savit, the Plaintiffs have not done enough to establish their requested prevailing market rate. *See, e.g.*, *Merrick*, 316 F. Supp. 3d at 512–13 (weighing five declarations on complexity of IDEA litigation and reasonable rate); *Wimbish v. District of Columbia*, 251 F. Supp. 3d 187, 192 (D.D.C. 2017) (considering "in addition to affidavits from [the plaintiff's] attorneys . . . nine affidavits from IDEA practitioners in this jurisdiction"); *Copeland v. District of Columbia*, 208 F. Supp. 3d 255, 257 (D.D.C. 2016) (weighing "in addition to detailed affidavits from [the plaintiff's] own attorneys, . . . affidavits from five IDEA practitioners, unaffiliated with this litigation, all of which support [the] Plaintiff's contention that IDEA litigators commonly charge and are awarded standard *Laffey* rates, and that rates significantly below that measure in this case would be insufficient").

***

At bottom, the Plaintiffs' submissions do not support application of the full Fitzpatrick Matrix rates in this relatively straightforward IDEA case. The Court thus joins scores of other courts in this District in applying 75% of the rates in the matrix. *See, e.g.*, *James v. District of Columbia*, 302 F. Supp. 3d 213, 221–22 (D.D.C. 2018) ("'[A]n overwhelming number of cases' in this district have awarded 'IDEA fees [that] adopt rates equivalent to seventy-five percent of

[USAO] Matrix rates.'") (quoting *Cox v. District of Columbia*, 264 F. Supp. 3d 131, 145 (D.D.C. 2017) (other internal citations omitted); *Bond ex rel. K.M. v. Friendship Public Charter School Board of Trustees*, No, 23-cv-367, 2023 WL 8710370, at *6 (D.D.C. Dec. 18, 2023); *Snead v. District of Columbia*, 139 F. Supp. 3d 375, 381 (D.D.C. 2015) (collecting an "overwhelming number" cases finding 75% of prior USAO Matrix to approximate the prevailing rate for IDEA administrative proceedings).

### b. Attorney's Skill, Experience, and Reputation

The District next takes issue with the requested Fitzpatrick Matrix rate for the Plaintiffs' attorney, Ruzzel Castañeda. It argues that Mr. Castañeda should receive a lower rate because he had only practiced law in the United States for five to six years when the underlying administrative proceeding took place. Def.'s Opp'n at 14–15. The Court agrees.

Mr. Castañeda graduated from St. Louis University School of Law in the Philippines in 2002, but he has only been practicing law in the United States since 2018 when he received his license in the District. *See* Pls.' Mot., Ex. 4, Declaration of Ruzzel E. Castañeda ¶¶ 6, 8, 15–17, ECF No. 7-2. Although Mr. Castaneda previously worked as a legal researcher in 2005 at the Regional Trial Court of Baguio City, Philippines, and as an intern in 2015 at the Judicial College of Maryland, *see* Pls.' Reply at 7, Mr. Castaneda was not practicing law in the United States in either of these roles, *see* Pls.' Mot., Ex. 4, Declaration of Ruzzel Castañeda ¶ 14; *cf. EPIC v. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 70-71 (D.D.C. 2013) (attorney not admitted to bar compensated at "Paralegals & Law Clerks" rate). The Court awards attorneys' fees for Mr. Castañeda's work at 75% of the rate for attorneys with five years of experience for the time worked in 2023 and six years for the time worked in 2024. *See Tillman*, 123 F. Supp. 3d at 59 ("When there is a significant gap between the date an attorney graduated from law school and

when he or she actually began practicing law, it is the latter date that should control in setting his or her [USAO Matrix] rate."); *Salmeron v. District of Columbia*, 195 F. Supp. 3d 153, 167 (D.D.C. 2016) (same).

### c. Attorney's Billing Practices

The District challenges three aspects of the billing practices in this case. The Court finds merit in some of its arguments and excludes expert fees and attorney time spent on scheduling.

*First*, the District challenges $6,000 in expert fees paid to Wilma Gaines. *See* Def.'s Opp'n at 18. While the IDEA itself does not support the recovery of expert fees, "under District of Columbia [l]aw, a Court 'may award reasonable expert witness fees as part of the costs to a prevailing party' in IDEA cases." *Wright ex rel J.J. v. District of Columbia*, No. 18-cv-2818, 2019 WL 4737699, at *6 (D.D.C. Sept. 28, 2019) (quoting D.C. Code § 38-2571.03(7)(A)). But the party seeking expert fees must show that the claimed rates "are based on the rates prevailing in the community for other experts providing similar services in similar cases." *Id.* at *7 (internal quotation marks omitted). To justify the fees paid to Dr. Gaines, the Plaintiffs provide her resume and argue that her hourly rate of $245 is "reasonable, given [her] qualifications and expertise." Pls.' Mot. at 13; *id.* Ex. 8. But they provide nothing whatsoever to support the conclusion that her rates "are based on the rates prevailing in the community" for other experts providing similar services in similar cases. *See* D.C. Code § 38-2571.03(7)(B). Without more, the Court cannot award expert fees. *See, e.g.*, *Wright*, 2019 WL 4737699, at *7; *Burks v. District of Columbia*, No. 18-cv-2726, 2019 WL 2189488, at *8 (D.D.C. Apr. 16, 2019), *R. & R. adopted*, No. 18-cv-02726, 2019 WL 2185371 (D.D.C. May 1, 2019) (recommending a denial of award for expert fees because the plaintiff failed to provide any evidence concerning "rates prevailing in the community" and similarly just produced experts' resumes); *see also Lynn v. District of Columbia*, No. 24-cv-2648,

2024 WL 3967286, at *4 (D.D.C. Aug. 27, 2024).  (denying expert fees where plaintiffs "failed to provide any evidence whatsoever supporting the reasonableness of the expert's fees in this case").

*Second*, the District argues that the Plaintiffs cannot bill Valaree Willcox, Dr. Gaines' "educational assistant," as a paralegal. *See* Def.'s Opp'n at 19. A paralegal or legal assistant is a person "qualified by education, training or work experience who is employed or retained by a lawyer, law office, corporation, governmental agency or other entity and who performs specifically delegated substantive legal work for which a lawyer is responsible." *McAllister v. District of Columbia*, 21 F. Supp. 3d 94, 105 (D.D.C. 2014) (internal citations and quotation marks omitted). Here, the Plaintiffs' counsel retained Ms. Willcox (through Dr. Gaines) to complete paralegal work, *see* Pls.' Reply at 12 ("Her title denotes that her assigned supervisor is Dr. Gaines, but her work is that of a paralegal."), and billed her time for quintessential paralegal work, including recording information for other employees, taking notes during client meetings, and finalizing documents for disclosure, *see* Pls.' Mot., Ex. 3 at 7, 10, 18; *see also Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) (listing tasks that paralegals perform, such as factual investigation; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence); *see also Bachman v. Pertschuk*, No. 76-cv-0079, 1979 WL 162, at *13 (D.D.C. Mar. 14, 1979) (finding that certain tasks such as indexing and numbering documents would have been more appropriately performed by trained paralegals). It is therefore appropriate to bill Ms. Willcox's work at a paralegal rate.

*Third*, the District points out that counsel spent time performing clerical work like scheduling calls and preparing disclosures. *See* Def.'s Opp'n at 17–18. The Court agrees that time spent on scheduling tasks are not reimbursable at attorney rates. *See* Pls.' Mot., Ex. 3 at 11 (time entry for Nov. 16, 2023; 0.17 hours "[p]laced phone call to parent to obtain her available dates for

the due process hearing"); *id.* at 12 (time entry for Nov. 21, 2023; 0.17 hours on scheduling call); *id.* at 13 (time entry for Nov. 22, 2023; 0.33 hours for scheduling email); *id.* at 16 (time entry for Dec. 14, 2023; 0.17 hours on scheduling phone call); *id.* at 21 (time entry for Jan. 17, 2023; 0.50 for scheduling phone call); *id.* at 22 (time entry for Jan. 18, 2024; 0.33 for scheduling phone call); *id.* at 23 (time entry for Jan. 19, 2024; 0.17 hours for scheduling phone call); and *id.* at 26 (time entry for March 15; 0.17 hours for scheduling phone call). Those time entries comprise clerical tasks that do not require legal expertise. *See, e.g.*, *Rapu v. D.C. Pub. Schools*, 793 F. Supp. 2d 419, 427 (D.D.C. 2011) ("Charging attorneys' rates for a phone call to simply confirm attendance at a meeting is unreasonable."); *Robinson*, 61 F. Supp. 3d at 66–67 ("reducing by half because of the clerical nature of the tasks. . . appears reasonable, and, in fact, somewhat conservative"). The Court will reduce counsel's rate by 50% for those time entries. *See Robinson*, 61 F. Supp. 3d at 66–67; *Lynn*, 2024 WL 3967286, at *3.

But the District does not explain why the preparation of disclosures is clerical in nature. These tasks appear to require legal expertise and are a far cry from the type of tasks at issue in *Lynn*, the case the District relies on. *See* Def.'s Mot. at 17–18. *Compare* Pls. Mot., Ex. 3 at 20 (time entry for Jan. 11, 2024; 4.33 hours in "[p]reparation included checking each of the documents in the PDF and determining what documents needs to be added."), *and id.* at 21 (time entry for Jan. 17, 2024; 2.33 hours to "review[] the disclosure from both parties"), *with Lynn*, 2024 WL 3967286, at *3 (finding plaintiffs' counsel could  not charge full rates for "copying, tabbing, [and] labeling" and "[g]o[ing] through all emails, organiz[ing], print[ing], summariz[ing] for disclosures"). The Court will therefore reimburse these charges at the rate for an attorney.

### C.    Partial Success

Finally, the District argues that the Court should reduce the total award to account for the Plaintiffs' partial success, as they won only three of their four claims in the administrative proceeding. Pls.' Mot., Ex. 2 at 3, 27–30. The "product of reasonable hours times a reasonable rate does not end the inquiry," as the court can "adjust" the fee award based on the "results obtained." *Hensley*, 461 U.S. at 434. "There is no precise rule or formula for making these determinations." *Id.* at 436–37. Rather, courts "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* District courts "necessarily ha[ve] discretion in making this equitable judgment." *Id.* at 437. A court may exercise its discretion to reduce a prevailing party's attorney's fee "if the relief . . . is limited in comparison to the scope of the litigation as a whole." *Id.* at 440. "[T]he most critical factor is the degree of success obtained." *Id.* at 436.When there are "both successful and unsuccessful claims, if 'the unsuccessful claim could not have given relief beyond the scope of the successful claim, the fact of failure is not an independent basis for a reduction.'" *Merrick v. District of Columbia*, 134 F. Supp. 3d 328, 335 (D.D.C. 2015) (quoting *Goos v. Nat'l Ass'n of Realtors*, 68 F.3d 1380, 1387 n. 12 (D.C. Cir. 1995), *decision clarified on denial of reh'g*, 74 F.3d 300 (D.C. Cir. 1996)).

In this case, the Plaintiffs received all of the relief they sought at the administrative hearing. While the hearing officer found that DCPS's failure to provide N.W.'s educational records did not amount to failure to provide a free and appropriate education, he nevertheless found a procedural violation and ordered DCPS to produce the missing records. *See* Pls.' Mot., Ex. 2 at 15. Even viewing the first claim as unsuccessful, the Plaintiffs' "unsuccessful claim could not have given relief beyond the scope of the successful claim[s]." *Merrick*, 134 F. Supp. 3d at 335 (cleaned up); *see also Hensley*, 461 U.S. at 433. The Court therefore declines to reduce the Plaintiffs' total fee

award on this basis. *See, e.g.*, *Merrick*, 134 F. Supp. 3d at 335–36 (finding "[a] 10% reduction is not warranted because plaintiff won all of the relief she sought"); *cf., e.g.*, *Brown v. District of Columbia*, 80 F. Supp. 3d 90, 101 (D.D.C. 2015) (reducing the overall fee award by 10% where the plaintiff lost on four claims in the administrative proceedings, including one substantive claim).

## CONCLUSION

For these reasons, the Court grants in part and denies in part the Plaintiffs' Motion for Attorney's Fees, ECF No. 7. The Court awards the Plaintiffs $71,545.10 in attorneys' fees and costs.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:  May 19, 2025